All right, our next case for today is Idrissu against Secretary Mayorkas, 21-2349, and Ms. Provax, when you're ready, we're ready for you. Good afternoon, Your Honors. May it please the Court. My name is Nicole Provax, and I represent the appellants Seidu Idrissu and Robin Sanders. The District Court erred in dismissing appellants' complaint for two main reasons. First, the agencies violated federal regulations when they failed to provide appellants with Ms. Sybil's initial admissions. And second, the agencies' decisions, meaning USCIS and the Board, were arbitrary and capricious under the Administrative Procedures Act. Regarding the first issue, the agencies violated federal regulations when they failed to provide appellants with Ms. Sybil's initial statements. Do we know for sure that they have someplace in their files a complete copy of those statements? It is still unclear to this day whether an actual written statement even exists. So why is it, unless the agency is committing some terrible sin of fraud, why isn't it enough on a deferential standard of review to see that the first wife, Ms. Sybil, gave some pretty damning testimony? And when you have one account and then a recantation, it's up to the trier of fact to decide which one to believe. And they chose to believe the first one. What is the role of this Court in that circumstance? Well, the Court should look as to whether the agencies violated the federal regulations by not providing the actual statement. This isn't on the merits, then? This is a procedural flaw that you're pushing? Yes. Okay. So the Notice of Intent to Deny provided a brief summary of the statement. And here is what we know from that Notice of Intent to Deny. That the statement was made maybe sometime in 2005, 2006. It was made freely under oath. Ms. Sybil's indicated that she never lived with Mr. Idrisu, that he offered her financial help, and that she would call him sometimes for a favor or for help. The Notice of Intent to Deny also indicated that there was some evidence that corroborated this initial statement. But the Notice of Intent to Deny did not provide the actual statement or explain what this corroborative evidence was or otherwise provided to appellants. So can I ask you whether at any point you say proffered what kind of facts you might have shown that would have demonstrated the validity of that first marriage? But there was, I gather, a lease, which might have been that kind of evidence. I don't know. But, you know, people go out and they scour around. They find out about churches or they find out about, you know, community activities or what have you. People who might have known them. Is there any hint that there is such evidence out there? The only evidence that's in the record is Ms. Sybil's rebuttal statement, some joint bank account statements, and a joint lease. The other evidence that was in the record was not provided to appellants. And what was the reason for disregarding the joint lease and the joint bank accounts, which are actually two things they look for? There wasn't any reasoning given in either decision. So appellants requested Ms. Sybil's initial statement but did not receive it. And appellants were expected to respond nearly 11 years after that statement was written without knowing when the statement was written, where it was written, who was present when that statement was given, whether an actual written statement existed, the full contents of the statement, and other circumstances surrounding the statement. This court has never found that a summary of derogatory evidence will always be sufficient. Indeed, this court has repeatedly urged USCIS to provide the actual document and has warned USCIS that it should not assume that this court will tolerate a summary as a general rule. Well, what we've said, I mean, we frequently have excused the lack of the full statement. We certainly have never said that summaries are always okay. So there should be some set of cases where it's not. But then sorting out which is which is the next task. Right. So the cases that are cited in appellees and appellants brief where this court has found a summary to be sufficient, those cases are distinguished from the case at hand. For example, in Flieger v. Nielsen, this court found that the quotation was sufficient because it was so straightforward that providing the actual document wouldn't have been any more enlightening. In this case, we learned for the first time in USCIS's decision that Ms. Civil's statement was made in the presence of two adjudicating officers as well as her attorney of record. And we learned some additional information from the board's decision for the very first time that was not previously disclosed, such as additional statements that were made during that interview. In another case, Galley v. INS, this court found that in that case, the notice of intent to deny provided a much more detailed summary of the derogatory statement, including the date that it was given during an interview, that it was a sworn statement, and also specifics about the statement. In addition, in that case, the board's decision actually cited the statement verbatim, which was not the case here. As the Ninth Circuit found in Zeregzi v. USCIS, appellants were entitled to at least the complete administrative record on which the agencies relied on in making their decision. Because the agencies failed to disclose Ms. Civil's initial statement, appellants were not aware of all the derogatory evidence of which the agencies based their decisions on and were therefore not provided a reasonable opportunity to rebut the derogatory evidence. All right, which is why I asked you about a proffer or something. I can imagine circumstances in which that would be highly prejudicial, and I can imagine circumstances in which it really might not be prejudicial because there isn't much more other than what they summarized. And it's not clear to me what you would have to show that this was a prejudicial lapse. Well, we learned information for the first time in USCIS's decision and the board's decision, and appellants weren't afforded an opportunity at that point to rebut those additional details that were disclosed for the first time. We also don't know, the record doesn't give us any information about whether the statements were coerced, whether she was under duress. You know, we didn't understand the full circumstances, and we still don't understand the full circumstances just based on what we've received from the NOID, from USCIS's decision, and from the board's decision. This brings us to our second issue, that the agency's decisions were arbitrary and capricious, and therefore the district court's dismissal of appellant's complaint was improper. An agency decision is arbitrary and capricious if the agency fails to articulate a satisfactory explanation or examine relevant record evidence. Now, the agencies failed on both of these grounds. Regarding the first ground, as has been made clear in appellant's brief, we are not asking this court to re-weigh evidence or substitute its judgment for that of the agencies, which it may not do. Rather, we are asking this court to decide whether the agencies provided a satisfactory explanation, which we believe they have not. Both agencies in their decisions merely announced conclusions that appellants failed to submit sufficient evidence to overcome Ms. Sybil's initial statements. As the notice of intent to deny claimed that there was evidence that corroborated these admissions, but neither the notice of intent to deny nor either decision states what this evidence was, provides it, or otherwise explains why the joint leases, the joint bank account, or Ms. Sybil's rebuttal statement was insufficient. The agencies merely reacted they did not consider all the evidence in the record. We therefore ask this court to reverse the district court's decision, and I reserve the remainder of my time for rebuttal. All right. That's fine. Thank you. Ms. Reno. Good afternoon, Your Honors. May it please the court. Catherine Reno for the government. The only way for plaintiffs to receive the relief they seek in this case is for this court to re-weigh the evidence and substitute its judgment for that of the agencies. Now, why is that the case?  Think of sentencing guidelines cases. I mean, we don't question the sentence that a district judge does, but if somebody commits a procedural error, such as failing to calculate the guidelines properly or failing to articulate the reasons why particular arguments have been accepted or rejected, then that's a procedural flaw that actually precedes the agency's weighing of the evidence. And as I understand it, the primary procedural flaw that Mr. Idrisu is pointing to is that at least in this circumstance where this statement was the only evidence, it's not like the other cases where we've said sometimes a summary can be okay when there was lots of other evidence. It's the only evidence, and we don't have the best evidence of that. We don't have anything close to it. We have a trust us, we're the government. This is what we say the summary is, but there are two favorable pieces of evidence, namely the joint lease and the joint bank accounts. That's the type of thing the agency looks for. I'm disturbed if there's a preliminary procedural flaw such that the regulations that govern the agency have not been followed. It's kind of garbage in, garbage out. We don't have the right basis for finding a fact. Now, it could come out exactly the same way in another round or not, depending on what happens once that flaw has been corrected. Here, Your Honor, there was no procedural flaw. The agency complied with federal law by providing a very detailed summary of the ex-wife's first statement. Neither the regulation nor this court's precedent required the agency to provide a copy. We have said sometimes it's okay to have a summary, but we have never said that the agency's unilateral summary is automatically and always fine. That's absolutely right, Your Honor, but in this particular case. Why is it, though, when in this particular case there's no other evidence? I certainly don't have any problem with cases that say, you know, a summary's fine, here's all this other evidence, here's this other thing, too. You don't need to belabor things, but this is it. Your Honor, the regulation since 1964 has required two things, notice of derogatory information and an opportunity for the petitioner to rebut the derogatory information prior to the decision. And the notice of the derogatory information, what would have killed you to have just given the full statement? Your Honor, I can tell you that the statement here was very detailed. Excuse me, the summary of the statement was very detailed. As my adversary pointed out, there were at least five different facts that the notice of intent to deny explained, that she freely admitted under oath, that the marriage was for the purpose of the beneficiary to stay in the United States permanently, that he offered to help her financially and to give her any financial help she needed otherwise. Now, this is when they're in the middle of the divorce for infidelity reasons. You don't think there's any reason to think that she might have thought this would be a great way to get back at him, and now she's not mad at him anymore, so she's recanted and said, actually, it was a bona fide marriage. In terms of the first statement or the second statement? Right, she's in the middle of the divorce, as I understand the timing of the first statement. The divorce is final in April 2013, and then he remarries. So the first statement relates to a time when there's some real contention between these parties, particularly for that reason for divorce. If that were the case, one would expect the ex-wife in her second statement to have mentioned that. At the time of my first statement, I was bitter, we were going through a divorce, that wasn't the truth. She never raised any of those allegations at all in her second statement, which was given only about a month after they received the notice of intent to deny. That was never, that allegation was never raised. So I don't think it would be appropriate or reasonable for the agency to have assumed or read that in when she never made that allegation. But since 1964, as I said, the regulation has only required notice of derogatory information, and the agency provided plenty of notice of that derogatory information that it relied on, including that the two never resided together during the duration of the marriage, and she only called him when she needed favor or help. So any information that perhaps... So does the agency ever explain why it chose to credit her earlier statement over her later statement? And does the agency ever explain why it disregards the lease and the bank accounts? It does, Your Honor. In the BIA's decision, which is, let's see, I think it's an exhibit to the plaintiff's brief, the BIA states that the petitioner correctly states that some evidence was submitted by the former spouse with her visa petition filed on behalf of the beneficiary. However, she does not explain how the joint lease and joint bank account records to which she refers or any other evidence of record rebuts the withdrawal statement and satisfies her burden. Why doesn't it rebut? I mean, it's exactly the kind of evidence that does rebut. They just sort of say it doesn't rebut, but I don't understand why. Well, Your Honor, we don't need to get to that point here, because the district court granted the motion to dismiss, so it didn't really get into the merits. However, that is a rational basis, and this court has to... But joint leases are now no longer on the agency's list of things that would show a bona fide marriage? Not necessarily. It depends on the case. A joint lease, anybody can sign a joint lease, and they may never, ever have resided together at that residence. Nothing precludes two people from signing a lease and living in two separate places. That doesn't mean the marriage necessarily was bona fide at the beginning of the marriage, which is the standard here. And in this case, as I was saying, there's no need to look at an administrative record here, because the first amended complaint made allegations that the decision of the agency was based on assumption and conjecture, but didn't raise any actual allegations that the agency ignored some specific piece of evidence or didn't explain its reasoning. And threadbare recitals of causes of action, supported only by conclusory statements, are insufficient to survive a motion to dismiss. The first amended complaint makes clear that plaintiffs simply disagree with the weight that the agency's assigned to the two statements, and they want this court to reweigh evidence, which black letter law prohibits. If Your Honors have no further questions, I ask that the district court's decision be affirmed. Thank you. All right. Thank you very much. Anything? Final words, Ms. Provax? Yes, Your Honor. Thank you. In regards to opposing counsel's contention that Ms. Sybils should have raised those issues in her rebuttal statement, I'd like to note that the initial statement was made somewhere around 2005-2006, and Ms. Sybils was expected to respond to these allegations nearly 11 years later. She couldn't have been expected to remember fully what she said during that time. Do we know if she was shown the earlier statement? No, there's no indication that she was shown the statement. Regarding opposing counsel's contention that appellants just disagree with the weight that was given, the evidence, there was no actual weighing of the evidence. The agencies merely announced conclusions that appellants failed to submit sufficient evidence, but they didn't actually weigh the evidence that was in the record, and so we therefore ask that this court reverse the decision of the district court. All right. Thank you very much. Thanks to both counsel. Court will take the case under advisement.